The last case is United States v. Harden. Counsel, take your time getting to the bench. Mr. O'Connor, we are ready when you are. Thank you, Your Honor. And may it please the Court, of course, I'm Daniel O'Connor, and it's an honor to represent my client, Lakesia Harden, before you today. And this is what I believe is an important Fourth Amendment case that the Court will answer some important questions. And I think the good place to begin this argument is to frame a couple of well-established things and then move into the specifics of this case. First, the plain language of the Fourth Amendment cites to the right of the people to be secure in their persons and houses against unreasonable search and seizure. So the question we have, and of course warrantless searches are acceptable in some cases where there's consent, where something's in plain view and it leads to additional evidence. Isn't probation one of those circumstances too? Can't you agree to warrantless searches as a condition of your probation? Generally speaking, that's true. If there's reasonable suspicion, I think this Court has held and the Supreme Court as well, that probation is a basis for a warrantless search. That's true. Given that, I was a little bit confused why we didn't see you address or cite the Supreme Court's decisions related to this, Griffin and Knight's, related to probation and warrantless searches. Yes, Your Honor, Justice Britt. I think that, Justice Grant, I'm sorry. I don't think we dispute the fact that warrantless searches are acceptable as to probationers. And I think the heart of the issue in this case is to what effect does that have on individuals who may reside with a probationer? Is that the question, though? In other words, is the question that Judge Grant asked, are we balancing whether one person removed or a family member of a probationer? Should the reasonableness of a search in that context, or is this simply a consent case? Because I think the difference there, I think, matters to how, A, we decided and, B, how you all litigate the case. I think, I believe that the most analogous situation is treating it as a consent case with respect to the actual present occupant of the home. The issue here that there's two main points I'd like to, and I will go wherever the Court leads me, but the two main points I would like to make today are that this case is different than any other case. And I don't think that this Court has dealt with a probation situation specifically. It's dealt with consent cases, which is the most analogous situation. And in each one of those cases, does that hurt you? And I'm sorry to stop you there, but does that hurt you? Because, so as I understand it, the original suppression motion was about the reasonableness of the search. That's correct. The magistrate judge gives a very, very detailed order in this case addressing this issue and a lot of others. And then the objection to the district court, as I understand it, was limited to the coercion issue and not to the consent issue. Am I reading that wrong? Your Honor, in rereading my objection, the fact there was factual objections and then there was objections to the conclusions of law. And I objected to the fact that the magistrate court didn't mention the fact that the defendant, in this case Ms. Harden, was detained on the couch when he proceeded to search the remainder of the house. That's the fact that was omitted. The conclusion of law, it goes taking the totality of the circumstances including this fact in the case, the search was unreasonable under Randolph. And I think, so I believe that the objection itself goes to a broader, on the legal part, goes to a broader than I think has been characterized. Of course, we also argue that the government has waived any, waived the right to object to that, but I believe that the issue was preserved in further review of the record. That's the issue I focused on in the objection, but the objection itself was broadly said that the search was unreasonable. Why did the government waive the waiver issue? I believe by entering an agreement with my client where she gave up significant appellate rights and she, it essentially agreed to that. It agreed to my client, my client on condition that she was able to appeal the motion to suppress as a whole. There's no limitation on that. The government agreed that she could appeal those issues raised in the motion to suppress. And she in turn gave great consideration for that. And she actually cooperated with the government and she also gave up the right to appeal other trial issues, which at that point she still had. And the district court did not reject the agreement. It sentenced her with that in place. So I think it had the opportunity. If it felt like those issues weren't preserved, it could have taken action. I want you to put aside pure consent and look at this through the rubric of NITES and sort of the balancing tests of what's reasonable. So the way NITES looks at these sorts of issues in the probation context, it's sort of the burden on the individual and the government interest in doing so, and it balances those two things. Now, we know what the outcome of that balance is for the probationer, him or herself. What we haven't decided is the family member. But does the family member not also have a lessened expectation of privacy when they know that they are living with a probationer and they know that that probationer has significant conditions, including conditions of search? Here, as I understand the record, not only is your client a former corrections officer, so would be very familiar with all of this, but that officers had been to the house before to do searches and to visit, and so she knew all of this going into it. Does that not play into the calculus of what her expectations are balanced against the very strong and legitimate government interest for why it's important for the government to have access to probationers' homes because it's simply an extension of the punishment? Yes, Your Honor. Thank you, Judge. The court has emphasized that the government has certainly an interest in supervising probationers, and in any case, there's an assumption of the risk that your roommate or significant other, or even in this case, your spouse is significant as a probationer, may consent to a search of your home. Is consent really the right rubric, though? Right. That's what I'm asking. Okay. So whether it is or not, the issue here is that I believe, and I've used these consent cases because I believe they're the most analogous. The Tenth Circuit dealt with sort of a similar case, but there's some significant distinctions in that case. But in this case, the probationer was not present and the home. Well, let me analogize to something. So normally, the government can't tap your phone without a warrant, right? That's correct. And that goes to you have an expectation of privacy in using the lines. And to overcome that, there needs to be probable cause. However, when you call the prison, can the government tap your line? Yes. You know that they can record your phone calls? Yes, Your Honor. Right. Unless it's legal. But if it's personal phone calls, they can record, right? And what's the reason for that? So I don't have my – my rights are the same. I'm not under any sort of supervision. But I am calling someone or someone is calling me that is under significant supervision. And under that theory, the government is allowed because there's a lowered expectation of privacy. In other words, I know up front what's going to happen, right? That's correct, Your Honor. When you – I assume you've visited a jail before, right? Yes, Your Honor. And what's the big sign when you drive up to the jail? What do they tell you? I believe they typically say you may be supervised or – You may be searched or we can search your car. That's correct. You're under heightened – you're under some sort of heightened awareness there. And so the expectation of privacy is different. And so the reason I'm asking about these things is here the theory of Knights is if you're a probationer, you are still under a sentence. You're just serving that sentence in your home and in the community with the hope of rehabilitation. If you're serving that with somebody in their home, is that person not subject to the same diminution of expectation of privacy that if you call a prisoner or visit that person at the prison? I hope not, Your Honor. And the reason is that I think a home is much different than a jail cell. Well, let's say – could Ms. Harden have put a sign on the door of the home that said, I, another occupant of this home, do not consent to a search? I'm exercising my Fourth Amendment right to not consent to that search. Your Honor, I don't believe she could do that. And I don't believe it would be reasonable for her to do that with respect to searches of her significant other who is actually on probation and subject to a sentence. The issue here is that the implication of this case, if this search is upheld, is constitutional, is that if you live with a probationer, you now have an affirmative obligation to defend your home against searches and seizures. So, in this case, she would have to realize that, oh, anybody can search my home. I've got to stand guard and object, even if my probationer significant other is not in the home. That's my point. I'm not sure – if she can't put that sign on the door issuing a global objection, then I'm not sure – explain to me why she could issue a one-time objection. What's different? And it may be the case, Your Honor, that the objection – because I understand that the Knights in other cases have recognized the importance of the government's interest in supervising individuals under a sentence. But – and maybe we're not asking, Your Honor, that the court prevent searches to the probationer. But if a search is going to be – if invading someone's space who – if not someone under a criminal justice sentence present, if you're invading someone's space and you don't get their consent, that's unreasonable. But why couldn't the police have wondered here, they smell marijuana coming from the probationer's home. I would be unlikely, if I were him, to come out unless I had to in that circumstance. Why do we necessarily assume that the search was with respect to her rather than with respect to him? What leads us to that conclusion? Thank you, Judge Grant. In this case, she allowed them into the entryway to determine if Mr. Linder was there. I think the police concluded fairly quickly that he wasn't present in the house. In fact, they checked, right? They checked. The search – the ultimate search went further than that and went to the closet and actually discovered the substances. Into a box in the closet. They opened a box in the closet. That's correct, Your Honor. Yeah. I think you could say you're not asking for a sign on the door. You're just asking – this is the crux of it to me – he's not present. She is present. Can she object under those circumstances? And the problem with your case, as I see it, is we don't even have to decide that because she didn't object. And your answer to that is, well, she was detained, not free to leave, so she couldn't object. And it seemed all we have to do to decide this case is that she was present, she didn't object, and the fact they didn't handcuff her, they hadn't arrested her, they hadn't done anything, the fact that there was no objection here. So we don't need to get into whether she could globally object, one-time object. What's wrong with that? If I may, Your Honor, I would cite to Randolph, where I think it was Justice Souter, I'm quoting him, that a bright-line rule requiring affirmative refusal of a search might not be appropriate where there is evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding possible objection. And in this case, she did provide consent for them to come in the door. To look for him. That's correct. You're saying her consent was not to go search in the closet into the box. That's correct. Okay. And so you want to rule that she didn't have to object because there was no consent. You want to go back to the consent business. You want it to be a consent case. She didn't consent. That's correct, Your Honor. And your bright-line rule is everybody that lives with a probation officer still has to consent. If the probationer is not there. If they're not there. I'm just trying to see your rule. Such in the Blake case in the Tenth Circuit. In that case, the probationer or the roommate, and that one, Mr. Blake, who was the defendant, actually took the present tenant, took the police to the room where the probationer was and where the substance was found. And I reserve my time. You'll be on my time. Don't worry. I'll do your rebuttal. But could a search be reasonable in any circumstance if the probationer were not at the location? If Ms. Harden was not there? Set aside whether anyone else is there. But is it possible to have a search that qualifies as reasonable for a probationer? Without the probationer present? Right. I believe that there would be. So, why does that make a difference in the analysis, whether the probationer is there or not, given that you could have such a search whether or not he's there in the first place? In that case, Your Honor, I'm relying on the analysis of the Randolph Court where they talk about social norms and the fact that there was a present tenant in this case. There's a present tenant, and if a visitor came to the home, they wouldn't search the home without speaking to the tenant. They wouldn't walk right past them and search the home. And I think that's a social norm that I think the Court can recognize in its Fourth Amendment analysis. Thank you. Mr. Davids for the United States. May it please the Court. My name is Justin Davids. I am an Assistant U.S. Attorney for the Southern District of Georgia, and I represent the Appellee, the United States of America. Good morning, Your Honor. Good morning, Counsel. So let me tell you part of my issue on why I'm troubled by treating this as a consent case, solely as a consent case, without looking at the reasonableness framework of Knights. The condition here, which is the basis for the consent, the quote-unquote consent, states, and I'll read it, it's at Docket Entry 56-3. Probationer shall submit to a search of his or her person, residence, papers, vehicle, and or effects as these terms of the Fourth Amendment of the United States Constitution are defined by the courts any time of the day or night, with or without a search warrant, here's the underlying part, whenever requested to do so by a probation supervisor or any law enforcement officer, and consents to use anything seized as evidence. So isn't the condition the request by a probation officer to the probationer? I think other courts, having faced a similar situation, and I apologize, I can't remember which court that was. Not ours. But not yours, not the Eleventh Circuit for sure. But have reasoned that it doesn't make much of a difference if the probationer was present. This comes up in situations where arguments have been made before that if the probationer isn't there, they haven't given their consent. And I think the reason is if they couldn't refuse the consent, it doesn't really matter whether they're there or not. It effectively is the same. I don't see how it could be. Consent is, in other words, if I say, if I give my consent, which is an exception to the warrant requirements of the Fourth Amendment, you can search everything other than the box in my closet, it would be illegal to search the box in the closet, correct? Right. So the condition of the consent defines the scope of the consent. It's a contract like anything else. Right. Okay, so where I think the cases you're talking about are the cases that follow Knights. And Knights is not a consent case. What it says is the consent is relevant to the reasonable expectation of privacy. In other words, what the individual privacy interests are. But we balance those, we consider those balanced against the legitimate government interest here. Yes. And so it seems to me that the consent doesn't matter because, A, I think it may not apply here because the probationer wasn't there and was not requested. By the way, I agree he doesn't have to be present. He just has to be requested before you do it. But that was, as I understand the record, never done. And I think if you're looking at consent under the facts of this particular case, if you're looking at the consent from that point in time, you're right. There isn't consent. There is consent if you consider that originally Tremaine Linder did not have this condition in his probation terms. He violates. He tests positive for marijuana. And his probation officer offers him the opportunity to go into this drug treatment program with these meetings. But they require that they have this condition. And he consents to that. There's no doubt that if he was the defendant here, and this was about the search there, that as long as there was reasonable suspicion of the search and there would be from the smell of the marijuana, that that would be a fine search. The question here is my mind looking at, again, the rubric of not pure consent, but looking at it of the rubric of nights of is this a reasonable search or not. Sure. Is whether a family member living with someone, knowingly living with someone, who's been through this criminal conduct, through the violation, having this condition, understanding that there have been visits, has the same privacy interest as I have in my home. No, that person does not. Why? Explain that to me. So, you know, if we look at nights, if we look at Sampson, if we look at Griffin, these are all emanating from Griffin, but the nights and then Sampson versus California. It's this analysis that the Supreme Court engages in regarding the relative rights and legitimate expectations of a probationer or a parolee. And so in nights it involves reasonable suspicion. Sampson goes to the next step further and says, you know, for a parolee, you don't even necessarily need any cause, depending on the terms of the waiver. I'm glad that you're addressing nights and the other cases now, but why didn't we hear from you about those cases in your brief? I think, Your Honor, at the original time, we were looking at it from the perspective of this consent given from when he agreed to add this term to his probation terms, and it really just seemed to be obvious at that point. Upon reflection, you know, I agree that there's another line of thought, but I think that what we have is essentially the same result in that in the best case scenario for Ms. Hardin, she could have objected. I actually think now that it doesn't matter whether she objected or not. And under the rubric of nights, it would not matter. All that would matter is the balance. Sure. But if I can ask something related to that, how should we review this? So was the objection to the magistrate's report and recommendation limited to the coercion issue, the issue that Judge Hull was asking about, or was it a larger objection to the overall reasonableness of the search itself? And if so, should we review this under plain error or how we normally would review suppression issues? Sure. I believe it should be reviewed for plain error. Why is that? And that's because I think that the objection, while it did mention reasonableness, it did it generally. Rule of criminal procedure 59 requires specificity. This Court's prior precedent requires specificity. You have to object to the specific facts, and you have to object to specific conclusions of law. And I don't believe that that was actually done in the objection. I think when the objection was made, it really focused on the second part, the overbearing of the will to object. And I don't believe there's some— I mean, but he cites Randolph. He talks about consent. It isn't like the issue of consent wasn't mentioned at all. Sure. He cites the case that he relies on for why consent wasn't sufficient. But he wasn't challenging that the Court made an error in determining that his client had to object. As the Court found, the thrust of his argument was she couldn't object because of the way the police were acting at the time. And I know that there was some allegation that there was this, perhaps, breach because there was an agreement. And I don't—it really goes to jurisdiction, right? Rule—or Section 636 allows the district court to delegate suppression-type issues to the magistrate courts for reports and recommendations. And then, you know, the magistrate court has findings that they set up in their report and recommendation, and then there's objections, and you have to object with specificity. And then the district court, you know, adopts. So basically, you're saying she ended up—an agreement where she preserved just this one issue, the motion to suppress. But basically, we should find, because the lawyer failed to be specific enough, she really waived all of her grounds for the motion to suppress. That's really what the net result would be, which would lead right to a 2255. That's basically what you're saying. No, I think she did get something out of it. She didn't waive— She got one little argument, that she was coarse. That would be all you would have her have. And she gets to argue plain error, I agree, in this case. The 11th Circuit's local rules— Well, there's no case like this. We know where plain error takes us. There's no case like this. Sure. There's no established law. I mean, that's nothing. Right. Okay. But her prior position would have been nothing. You're characterizing entirely how she did do objections. Moreover, the district court went beyond that and ruled on certain things. Yes, Your Honor. Okay. So the district court didn't really enforce the waiver, and narrowly say it. But in any event, when she preserves her right to appeal the suppression, how could anybody, prosecutor—I'm having trouble with this— but what we're going to do now is we're going to argue before the court, oh, really, she's waived many of her grounds to support that. Now think about that. Yes, Your Honor. That's basically what you're doing. I guess she entered her plea, but she preserves her right to do the motion to suppress, right? Right. Okay. But now you're going to tell us, yeah, we did that, but she waived six of the eight grounds. But by failing to object to the magistrate's order, that's where we are. Yes, Your Honor. If we enforce your waiver argument. Yes, Your Honor. And do plain error. Yes. Okay. I'm just trying to understand if I got this right. And I do have an explanation for that, though, if I might. And it's not that I'm trying to argue it based on the fact that she just didn't raise it and this is a waiver situation. It goes to jurisdiction on 1291. Does this court have the ability to do it? And the parties can't stipulate. District courts have broad discretion to reject in fairness and justice any waiver and reach the issue. That's a fundamental principle. I don't understand how it has anything to do with jurisdiction. Okay. I see it from a jurisdictional position that it's a 1291. I agree that if the parties could stipulate that this could raise, then yes, then they can raise it. But if it's jurisdictional, the parties can't stipulate the jurisdiction. How is it jurisdictional, the power of the court to hear it? Well, 1291, this court's power to review decisions of the district court. There's a final order. There's a judgment. That's what gives us the authority. Yes. Once we do that, we have plenary authority to look at everything, right? Well, I think, I mean, there are lines of cases where this court has held that they don't have, that this court doesn't have jurisdiction where a party has failed to object to portions of the magistrate's report. No, no, we said that that waives it. It's a waiver but not a jurisdictional argument. In other words, we have both a local rule and applying 636 that says if there's not an objection made to a portion of the R&R, it can be waived. But you have, I think correctly, have waived that argument. So we're not in that land of waiver. Right. We're in the land that Judge Hull is asking about of is this preserved or not. And the question is was the objection specific enough to the issue of sort of the general reasonableness and not just coercion? And secondly, did the district court under its de novo review, in any event, review all this stuff? In which case, it would seem that the district court wasn't confused and found it specific enough to reach that. So I think those are the questions that Judge Hull is asking and that I have as well. I appreciate that. I appreciate that, Judge Luck. I appreciate that, Judge Hull. What is the rule the government wants us to adopt? For the search itself? In this case. In this case, sure. In this case, I do believe that ultimately Knights and the Supreme Court's reasoning in that is going to apply. I think we're going to look at, and I don't think this is actually debated by the parties, that the court found that the search was reasonable as to Mr. Linder. So the next question is, is it reasonable to the co-defendant? And I think that if you look at the Supreme Court's decision in Matlock, if you look at this court's decision in United States v. Johnson that's cited in the government's brief, and the argument is, first of all, probationers at Knights have a lower expectation of privacy by virtue of being probationers and the state's legitimate interest in supervising probationers as well as protecting society. And then Matlock and Johnson come in and say co-tenants have a lower expectation of privacy by being co-tenants. You assume the risk that your co-tenant might do something that brings law enforcement or brings someone else into the house or into the residence. But those aren't probation cases, correct? Those aren't probation cases, but I think when you take them both combined, that that means that a co-tenant who's knowingly living with a probationer, they already have a lower expectation of privacy by virtue of living with another person, but they have an even lesser expectation of privacy because they're living with a probationer. By virtue of that probationer having— But does it matter, is it a matter of fact whether the co-tenant knows the conditions and knows that the person's on probation? In other words, people have roommate finders all the time, and I don't know every skeleton in the closet of every roommate I've ever had. Lord knows. Do I assume the risk in general, or does my knowledge go to the balance of whether I have a lessened expectation of privacy? I would think where a probationer or where a co-tenant does not know someone's on probation, they have that lesser expectation of privacy that goes along with anybody residing. Given that this was not really litigated at all under the framework that we're talking about now, and given that there's no fact-finding on that, does it make sense to send it back for some fact-finding on those issues if that fact that we just discussed matters to the balance? No, because I think the court ultimately found in the same way that the Blake court found in the Tenth Circuit, that essentially once it's reasonable as to the probationer, in a sense, and there were already facts in the record that Ms. Linder knew about that he was on probation. That's not in debate. That once the search was as good to the probationer, it was that she as a co-tenant couldn't complain that there was a search being conducted. And in Blake, it was a similar situation where the court found that even though the co-tenant had a probation condition, that once that court did the analysis as to the probationer's reasonable expectations of privacy, and they're like, and since that provides a reasonable search, the co-tenant can't complain. So basically, it's a bright line rule you want if you live with a probationer. And I'm going to add the knowledge because I do think the knowledge matters. And I think we have knowledge here, so we don't have to go beyond. But if you live with a probationer, you know they're on probation, and the probationer is not present, even if you stand at the door and object at one time, they can still search. It's reasonable. If it's reasonable as to the probationer, if they could search reasonable to the probationer, if she would then, and he is not present. Right. And she objects. Right. What happens? Well, okay. I think it's then reasonable for the police or law enforcement to search the common shared spaces. If there is reasonable suspicion. Yes. And in this case, we had probable cause. I don't know how they're going to know what the common shared spaces are on the scene, but anyway. Thank you. Mr. O'Connor, you've got three minutes. Very briefly, I would just like to address the objections to the recommendations. And I think you may have covered it, so I'm going to try to be as brief as possible. There's an objection to the fines of facts, and then this is in Document 74. You know, in light of this, defendant Hardin objects to the conclusion of law that Hardin's failure to object renders the search constitutional as defendant Hardin pursuant to Randolph. And then it goes on to consider the facts, the circumstances of this case. As the court noted, the district court did a full analysis, and the final order takes into account the full analysis of the case based on this objection. So I believe the issue was preserved. But beyond that, I think it would be unjust to my client if maybe my objection was too specific, trying to respond to the order. And I would also ask the court to look at the magistrate's order directing objections and compare that to the internal operating procedure of the language. There's no doubt there's not a waiver here. Okay. I think the only question is whether the objection is specific enough to then call a plain error review for us. And that's something that we're going to have to decide, I think. I understand, Your Honor. Thank you. I have one question. Did you raise at any point the specific language in the probation condition that Judge Luck mentioned? I did, Your Honor, in the initial brief in support of the motion for summary judgment. That was the issue that was raised, that they didn't go get consent from Lender for this search. And I would raise that as a point here, just that if this is a consent case, the consent that Lender gave was signed three months in advance of this search. And the actual present occupant was there and could have consented that day or it would have been very easy for the police to go get a warrant if they were searching as to her. And Randolph, in its analysis, notes that neither state law property rights nor common contractual arrangements nor any other source points to a common understanding or authority to admit third parties generally without the consent of the person occupying the premises. And so I think just social customs, if we look at it in that light, albeit there's a probation issue here and he's generally subject to searches, socially, are we willing to accept the fact that if you live with a probationer and you're home alone, in this case with her child and her little sister, that the police can come in and search anything they want just because there's been this probation. I want to make sure I understand this. So there was no warrantless search agreement in the original probation. You're saying it only occurred after he went to drug treatment. That's correct, Your Honor. I think he was subject to revocation. He signed it. Yeah, but it's only later. And you said three months before this happened? If I'm not mistaken, Your Honor. I think his waiver was signed in January and this search occurred in April. And do you agree she had knowledge that he was a probationer and knew he was subject to warrantless searches? Let's separate that. She knew he was a probationer. She's a former correctional officer, right? There's evidence in the record she knew he was on probation. All right. Does she know, is there evidence in the record that she knew that he'd been to drug treatment and that there was a new order? Yeah. There's evidence in the record that he knew that he had to go to what's called DRC classes. Right. Whether she knew the extent that he had waited. The warrantless search part. Did she know that or we don't know? As far as I recall, there's no direct evidence that she knew about that warrantless search agreement. Is there circumstantial evidence she knew about it? No. She let him in the house, right? I think that it's followed an arrest where I think there was an investigation at the house in January that maybe lit, if I believe lit. Let me ask you this. Did they come and search the residence at some point after he had the condition but before this search? Not that I recall, Your Honor. I don't believe so. Thank you. Thank you, Your Honor. Thank you. And I know that you're also CJA appointed, so thank you too to your service. Thank you, Your Honor. And to your client.